Nat H. Hentel, J.
Prior to actual trial, the main action for goods sold and delivered, and work, labor and services performed was settled in the full amount prayed for, namely, $2,839.45. Thus, defendant admitted the validity of plaintiff’s claim in toto.
Defendant’s counterclaims for $25,000 damages (a) based on plaintiff’s alleged breach of an oral contract; and (b) loss of profits caused by plaintiff’s claimed fraud and misrepresentation were tried before the court without a jury.
Defendant’s proof in support of his counterclaim principally is based upon two conversations had with plaintiff’s employees. The first conversation, early in September 1971, was had between Joseph Parisi, a salesman of the plaintiff, and defendant whereby defendant was offered in so many words, a 70%' discount if he would give his photofinishing work to plaintiff, and he would be given 24-hour service. In return, defendant agreed to shift his business from Strome, Inc., and Kodak who were then also performing photofinishing services for defendant at 60% and 38% discounts respectively. Defendant admitted that Strome’s work had not been u up to par ” at that time.
In the next two to two and one-half months, defendant incurred . a bill for net wholesale photofinishing services performed by plaintiff in the sum of $2,839.45, which he did not pay. Further, defendant testified that Mr. Parisi told him before the switchover that the discount would be for an indefinite period of time which Mr. Parisi categorically denied; and that he did not give all of his photofinishing to the plaintiff for several weeks after the alleged agreement was made, but continued ** splitting ” his work with Strome and Kodak until he assertedly could check on the quality of plaintiff’s work.
On or about November 9, 1971, another salesman for plaintiff, James Edelstein, testified that he told defendant at the plaintiff’s sales manager’s behest: 11 We cannot give you 70%; we are rolling it back to 50%; we cannot afford to hold you at 70% ; ” and “ We will finish you out the week at 70%. ” Defendant immediately stopped his business flow to plaintiff.
Defendant also testified that the custom of the trade in Queens County in 1971, was for wholesale photofinishers to offer a discount which, if accepted by the retailer, would be for an indefinite period while the retailer continued to do business ; and that such discount would always be available to the *507 retailer at his option without written contract or memorandum .unless the retailer ££ split his work” and gave some work to other finishers.
Such tinfettered power by a retailer to continue a discount operation without limitation appears to be beyond the realm of reasonable custom and usage and all credulity.
Mr. Edelstein was called by defendant as his own witness and was qualified as an expert in the photofinishing trade. He now is employed by Strome, Inc., now ■ back to doing the photofinishing for defendant at a 60% discount since January, 1972. He testified that the custom of the industry in Queens in 1971, was for the discount to be £ £ usually left tip to the. individual salesman within guidelines furnished by the employer; and that the salesman offered the discount based upon what he saw in the individual store, and what he projected the anticipated volume of business to be.” Further, he stated that the discount would remain in effect as long as the anticipated volume prevailed and the retailer did not deal with any other finisher.” With respect to roll-backs of discounts”, Mr. Edelstein testified that if a customer would take on another laboratory, cutting back on the volume of anticipated business, or did not pay his bills with reasonable promptness, or split his work to other laboratories, ’ that the discount offered could be amended or terminated by the photofinisher.
Mr. Parisi testified that defendant had initially represented to him that his net volume of business was $3,000 per month; and that based on such representation, plaintiff’s sales manager authorized the 70% discount. The proof further shows that at no time during September to November, 1971, did defendant’s net volume reach the $3,000 level.
The court is convinced that defendant failed to show by any cogent or credible proof that: a binding oral contract was entered into between the parties guaranteeing a continuing 70% discount indefinitely ” at the sole option of defendant; that such alleged agreement, if indeed it was made, contemplated any of defendant’s stores other than his Corona store then only in existence in September, 1971; nor did his proof establish any definitive loss of profits or damages, if-indeed there was an £ £ indefinite ’ ? contract, by any fair preponderance of credible evidence as a result of the termination of the 70% discount; and further, defendant has failed to establish any fraud or misrepresentation on the part of plaintiff in securing defendant’s account. In fact, the proof shows a representation of $3,000 net monthly business made by defendant to plain *508 tiff to secure an unusual 70% discount. Defendant’s own expert witness’ testimony on the customary usage within the industry on how discounts are set or ‘ rolled hack ’ ’, which testimony binds defendant, amply establishes that plaintiff was within its rights to “ roll-back ” its discount for failure of anticipated volume.; for tardiness in paying accounts due; and for “ splitting ” the total volume of business.
Accordingly, the court finds that an oral contract-at-will did come into existence for the period involved whiqh contract was not unreasonably terminated by the plaintiff under the circumstances. ' Counterclaim dismissed. Judgment for plaintiff accordingly.